UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-cr-047 (RDM) |
| v. : | |
| : | |
| HECTOR VARGAS SANTOS, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S SUPPLEMENTAL RESPONSE TO THE DEFENDANT'S MOTION
FOR REIMBURSEMENT OF FEES AND RESTITUTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this supplemental response to address the questions raised by the Court on April 22, 2025.

Hector Vargas Santos's (hereinafter "Vargas Santos" or "the defendant") moved to return the $70 special assessment, $500 in restitution paid for disbursement to the Architect of the Capitol, and $1456.19 paid toward a $2500 fine. *See* ECF No. 105.[1] The government did not oppose. ECF No. 106.

Relying on *Nelson v. Colorado*, 581 U.S. 128 (2017), the government indicated in the prior filing and at the hearing that courts of appeals have held that, when a defendant's conviction is vacated on appeal, the defendant is entitled to a return of fines, fees, and restitution. *See, e.g.*, *Boultbee v. United States,* No. 23-1884, 2024 WL 3220261, at *4 (Fed. Cl. June 27, 2024) (*"Nelson* involved individuals whose convictions were invalidated on appellate review, not pardons"); *United States v. Libous*, 858 F.3d 64, 69 (2d Cir. 2017) ("If Libous's conviction is to be vacated

---

[1] The defendant also seeks return of his personal property. ECF No. 105. It is in the process of being returned.

and his indictment dismissed, as our precedents require, then his estate is entitled to the return of the fine.").

Here, Vargas Santos's conviction was "invalidated" when the D.C. Circuit vacated it, and thus "there is no longer any basis justifying the government's retaining funds exacted only as a result of that conviction." *United States v. Ajrawat*, 738 F. App'x 136, 139 (4th Cir. 2018). The government thus agreed that, so long as the Clerk of Court confirmed that Vargas Santos in fact made the special assessment, restitution payments and fine he seeks to have returned, Vargas Santos is entitled to reimbursement of those payments.[2]

The Court requested at the hearing that the government determine who would pay the funds, if it were determined that the funds should be returned. The Court also requested information as to how other Courts in this district have addressed this issue.

The government requested information from the Clerk of the District Court and the Circuit Court. The Financial Office of the District Court indicated that the funds had been disbursed, per the usual protocol, to the Crime Victims Restitution Fund. The Financial Office of the Circuit Court indicated that if the money was retained by the court, it could generally be disbursed back to the defendant by the court pursuant to a court order. If not, and the court order did not specify a

---

[2] As indicated in the government's initial briefing, because the Architect of the Capitol is a governmental entity, the government understands *Nelson* to entitle Vargas Santos to a refund of that restitution payment. The government does not believe that *Nelson* would require that result had the restitution payment been disbursed to and vested in a third-party victim. *See Osborn v. United States*, 91 U.S. 474, 477 (1875) ("The government can only release what it holds."); *Knote v. United States, 95 U.S. 149, 153-54 (1877)*; *Fordham v. Georgia Department of Administrative Services*, No. 23-11214, 2023 WL 5747709, at *2 (11th Cir. Sept. 6, 2023) ("Allowing [the defendant] to claw back past restitution payments under guise of a presidential pardon would impair the Department and Great American's accrued property rights in that money, an outcome plainly proscribed by the Supreme Court."); *United States v. Reynolds*, 98 F.4th 62, 72 (1st Cir. 2024) (following *Nelson*, but declining to decide "whether the different considerations that might arise where forfeited property had been distributed to victims before a defendant's death would call for a different result").

particular source, then the monies could be distributed through a source of available funds identified by the government.[3]

In the interim, Judge Lamberth, in a similar matter, found that that *Knote v. United States*, 95 U.S. 149 (1877), applied instead of *Nelson*. *See Mem. Opinion in United States v. Sullivan*, 21-CR-00078 (RCL) (May 20, 2025), ECF No. 171. That case pertained to funds which were being retained by the United States Marshals for purposes of forfeiture, however, and not restitution as in this case, and the government further submits that the Court did not apply the correct analysis.

It is correct that the Appropriations Clause provides that "No money shall be drawn from the Treasury but in consequence of appropriations made by law." Article I, Section 9, Cl. 7. Nonetheless, in recognition that the United States government routinely receives funds to which it is not entitled, Congress has included in the general appropriation act for the Department of Treasury language that allows it to refund money erroneously received by the federal government. Specifically, Congress appropriates funds under 31 U.S.C. § 1322(b)(2) for the refund of money erroneously deposited into the Treasury's miscellaneous receipt accounts.

> (b) Except as provided in subsection (c) of this section, necessary amounts are appropriated to the Secretary of the Treasury to make payments from —
>
> (2) the United States Government account "Refund of Moneys Erroneously Received and Covered" and other collections erroneously deposited that are not properly chargeable to another appropriation.

31 U.S.C. § 1322(b)(2). The Department of Treasury has established account 20X1807 to address the refund of monies erroneously received and covered. Specifically, as noted in the Treasury Financial Manuel ("TFM") at Chapter 6, Section 3045:

---

[3] The government notes, however, that prior communications with the clerk's office with regard to the matter of the refund of special assessments indicated that the clerk's office would refund such payments upon vacation of a conviction if a Court were to order it to do so.

> When agencies can trace the amount subject to refund as erroneously credited to an appropriation account, the agency should charge the refund claim to that appropriation account whether lapsed, current, reimbursable, or nonreimbursable. Agencies may charge account 20X1807 only when depositing collections into the Treasury as miscellaneous receipts and the refund is not properly chargeable to any other appropriation.

Treasury Financial Manual, 6-3045 (available at TFM, last visited on May 27, 2025). *See also Reynolds v. Alabama DOT*, No. 85-cv-665-MHT, 2007 U.S. Dist. LEXIS 100441, at *16-19 (M.D. Ala. Nov. 30, 2007). Thus, if the Court enters an order directing that the fees and restitution be paid to the defendant in this matter, because his conviction was vacated, the Clerk of Court would be authorized under 31 U.S.C. § 3122(b) and 1 TFM 6-3045 to disburse those funds from the designated account.

Thus, there is statutory authority to support the refund of previously paid funds to correct an error that resulted in the erroneous deposit of money into the United States Treasury.

In this case, even though the defendant received a pardon, his conviction was vacated on appeal. There was no final conviction, and under *Nelson*, he is entitled to a return of the funds erroneously deposited into the Treasury.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:   */s/ Jennifer Blackwell*
JENNIFER BLACKWELL
Assistant United States Attorney
D.C. Bar No. 481097
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7068